IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>Fei DENG,<br><br>Defendant. | Case Number: **CR 20-00002**<br><br>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT** |

I, David West, being duly sworn under oath, state the following:

**I.  INTRODUCTION**

1. I am currently employed as a Special Agent (SA) with Homeland Security Investigations (HSI), which is the primary investigative arm within the Department of Homeland Security (DHS), and have been so employed since September 2018. I am assigned to the HSI Saipan office in the Commonwealth of the Northern Mariana Islands (CNMI). Prior to joining HSI, I worked as a Patrol Agent with the United States Border Patrol for over ten years. I have attended and graduated from the Border Patrol Academy, the Criminal Investigator Training Program, and the HSI Special Agent Training Academy held at the Federal Law Enforcement Training Centers in Artesia, New Mexico and Glynco, Georgia. I have received extensive classroom and on the job training in the areas of general law enforcement, criminal investigative techniques, interviews and interrogations, general and electronic surveillance, criminal and constitutional law covering federal search and seizure statutes, the execution of search warrants, and interviewing both suspect and victims of crimes, among others.

2.      As an HSI Special Agent, my duties and responsibilities include the investigation of possible criminal violation of passport fraud, visa fraud (Title 18, United States Code Sections 1541 to 1546 et. seq.), alien smuggling and/or harboring (Title 8 United States Code Section 1324 et. seq.), improper entry by an alien (Title 8 United States Code Section 1325 et. seq.) and the use of fraudulent identification documents (Title 18, United States Code Sections 1028 et. seq.).  Since being employed as a Special Agent, I have participated in several investigations involving the use of fraudulent identification documents.

3.      Part of my normal duties as an HSI Special Agent includes responding to calls for assistance from other Federal and state law enforcement agencies regarding foreign national subjects encountered by that agency.  I and other HSI personnel often respond in person to duty calls from U.S. Customs and Border Protection (CBP) officers at the Saipan International Airport or calls from U.S. Federal Protective Service (FPS) officers.  Enforcement actions that I or other HSI personnel may take, as a result of responding to duty calls, can range from a field interview of the subject to determine nationality/citizenship and immigration status, to criminal or administrative arrest of the subject.  Once it has been established that a subject possesses valid U.S. immigration status and no criminal violations have occurred, the interview is terminated.

4.      The information contained within this affidavit is based on my training and experience, and on information obtained from other law enforcement agents involved with this investigation.  I have also discussed the facts of this investigation with other law enforcement officials within HSI who have more extensive experience in conducting criminal investigations than I, and who share with me the substance of their experiences in conducting investigations of this nature.

5. I make this affidavit pursuant to Rules 3 and 4 of the Federal Rules of Criminal Procedure in support of the Criminal Complaint filed herewith, and for the issuance of an arrest warrant for the defendant named in the Criminal Complaint, for committing the violations of Title 18 U.S.C. §§ 1028(a)(1) and (f) (Conspiracy to Unlawfully Produce an Identification Document).

6. The elements of Title 18 U.S.C. §§ 1028(a)(1) and (f) are:

a). First, there was an agreement between two or more persons to knowingly and without lawful authority produce an identification document, authentication feature, or a false identification document which was in or affected interstate or foreign commerce;

b). Second, the suspect joined in the agreement, knowing of its purpose and intending to help accomplish that purpose.

7. The facts set forth herein are based on my direct involvement in this investigation, (including interviews I conducted), my conversations with other law enforcement officers having direct or hearsay knowledge of pertinent facts, my review of official documents and records generated and maintained by various governmental agencies and/or business entities, and information gained through my own training and experience. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact I have learned during the course of investigation. Unless otherwise indicated, all actions, statements, and conversations that I have described in this affidavit are related in substance and in part.

## II. SUMMARY OF INVESTIGATION

8. On January 24, 2020, Fei DENG (hereinafter DENG) was encountered by the Commonwealth of the Northern Mariana Islands (CNMI) Department of Public Safety (DPS) during a traffic stop. DENG presented a CNMI Driver's License to the DPS officer for

identification. Since DENG didn't speak English, DPS contacted Homeland Security Investigations (HSI) for assistance with translation and identification. HSI responded to DPS and determined DENG was a citizen of the People's Republic of China (PRC). At the HSI office a search of DENG's biometric information revealed that he entered the CNMI as tourist and is illegally present in the United States. Furthermore, HSI determined that CNMI Driver's License DENG presented to DPS was obtained using a fraudulent U.S. immigration document.

### III.   STATEMENT OF PROBABLE CAUSE

9.   On January 24, 2020, DPS Officer Michael Langdon conducted a traffic stop on a blue Toyota four door sedan for improper lane change. DENG was in the driver's seat of the vehicle and handed DPS Officer Langdon a Saipan Driver's License as his form of identification. DENG was unable to speak English therefore DPS Office Langdon contacted HSI Task Force Officer (TFO) Jesse Dubrall for assistance with translation and identification. HSI TFO Dubrall arrived at the traffic stop and subsequently determined DENG was a PRC citizen. DENG was transported to the HSI office located in the Marina Heights Business Plaza to further determine DENG's immigration status.

10.   HSI Special Agent David West conducted a search of DENG using a DHS database and determined that DENG entered the CNMI under the CNMI-only conditional parole on March 20, 2018, as a tourist, and was admitted until March 29, 2018. DENG had overstayed his conditional parole into the CNMI and was determined to be illegally present in the United States.

11.   Since DENG had no legal immigration status, HSI personnel contacted CNMI Bureau of Motor Vehicles (BMV) personnel regarding the CNMI Driver's License possessed and presented by DENG. BMV personnel gave HSI TFO Dubrall a copy of the Driver's License

application packet submitted by DENG to obtain his driver's license. The packet included a driver's license application, copies of DENG's PRC passport and China Driver's License and a CW-1 visa assigned to DENG. HSI conducted a search of the CW-1 visa, number: WAC1714452694, that was submitted by DENG, and the search revealed that DENG was not listed as one of the beneficiaries. Furthermore, a search of DHS systems revealed that DENG had not been issued or approved any CW-1 visas.

12. At the HSI Saipan office, DENG was interviewed by SA West and TFO Dubrall about the CNMI Driver's License he presented to DPS Officer Langdon. Utilizing a Mandarin interpreter to communicate with DENG, DENG was advised of his rights and agreed to an interview.

13. According to DENG, he came to the CNMI to work in March 2018 and never applied for any immigration status. DENG knew that he has no legal immigration status to be present in the United States. While in the CNMI, DENG was working in construction but wanted a job as a taxi driver. DENG asked around on how to obtain a CNMI driver's license. DENG was referred to BW by FLC to obtain a driver's license in Saipan without any legal immigration status.

14. Sometime in June 2018, DENG stated he contacted BW and paid him/her $1,500 to help him obtain a driver's license. DENG stated BW helped DENG complete the driver's license application and gave DENG the CW-1 visa, which he submitted to the BMV. DENG was issued a driver's license, which shows an issue date of June 8, 2018. DENG admitted that he knew it was illegal to obtain a driver's license without legal immigration status.

## IV. CONCLUSION

15. Based on the foregoing, I submit that there is probable cause that DENG knowingly and without lawful authority, produced a fraudulently obtained identification document to law

1 enforcement personnel, all in violation of 18 U.S.C. §§ 1028(a)(1) and (f). I have shown this
2 affidavit and the accompanying Criminal Complaint to Assistant United States Attorney Eric
3 O'Malley, and he informed me that they are in proper form.

Respectfully submitted,

David West, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on January 24, 2020:

U.S. MAGISTRATE JUDGE